**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON**

**DANNY R. SLONE,**

**Plaintiff,**

**v.** **Civil Action No. 3:17-cv-03602**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) and Defendant's Brief in Support of Defendant's Decision (ECF No. 12). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act.

Background

Claimant, Danny R. Slone, filed an application for DIB and SSI approximately on July 9, 2013. Claimant alleged disability beginning January 1, 2010. The claim was denied initially on November 14, 2013, and upon reconsideration on April 11, 2014. Claimant filed a request for a hearing on May 5, 2014. A video hearing was held on August 19, 2015. Claimant appeared for the hearing in Huntington, West Virginia, and the Administrative Law Judge presided over the video hearing from Saint Louis, Missouri. The Administrative Law Judge (ALJ) denied Claimant's application on January 5, 2016. Subsequently, Claimant sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied Claimant's request for review on

May 10, 2017. Thereafter, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920. The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920. If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920. If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920. If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920. By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920 (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See

> 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation:
>
> > Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental

disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.  20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date (Tr. at 19). Claimant met the insured status requirements of the Social Security Act through September 30, 2012.  (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: bipolar disorder; mood disorder; major depressive disorder; and generalized anxiety disorder. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 20).  The ALJ then found that Claimant has a residual functional capacity to perform a full range of work at all exertional levels, with the following non-exertional limitations. He is able to perform simple, routine and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes.  He is unable to tolerate interaction with the public.  He is able to perform work around coworkers throughout the day, but with only occasionally interaction with coworkers (Tr. at 21).

The ALJ found that Claimant cannot perform past relevant work (Tr. at 25). The ALJ found that Claimant can perform jobs that exist in significant numbers in the national economy such as night cleaner, hand packager and commercial cleaner (Tr. at 26). On this basis, Claimant's application was denied (Tr. at 27).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was born on June 1, 1978. On the date of the hearing Claimant was 37 years old. He lived with his dad. Claimant stood at 5 feet 10 or 11 inches tall and weighed 265 pounds (Tr.

at 46). Claimant has children of ages 20, 17, 16, 14, (two) 12, 8 and 7 years (Tr. at 50). Claimant last completed the eighth grade (Tr. at 56). He was held back in first and third grades. (*Id.*)

Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows.

Claimant underwent mental health treatment at Prestera Center, Inc., from December 2011 through April 2015. On December 13, 2011, Rita Morris, B.A., noted that Claimant had a normal appearance and normal speech, but was socially withdrawn and exhibited deficient coping skills (Tr. at 361-362). He was oriented and had normal thought content, normal memory, an appropriate affect, normal motor activity and made appropriate eye contact (Tr. at 362). Claimant denied both suicidal and homicidal thoughts (Tr. at 363). Ms. Morris diagnosed depressive disorder and opined that Claimant had a global assessment of functioning (GAF) score of 55 (Tr. at 364).[1]

On December 15, 2011, Claimant underwent an Initial Psychiatric Evaluation and was calm and oriented with a euthymic affect (Tr. at 357). He had a goal-directed thought process; intact memory; and fair insight, judgment and concentration. (*Id.*) Nika Razavipour, M.D., at Prestera Center for Mental Health Services, diagnosed Claimant with mood disorder not otherwise specified and opined that his GAF score was 50. (*Id.*) [2]

On February 21, 2012, Dr. Razavipour saw Claimant for medication management and again

[1] A GAF is the clinician's judgment of the individual's overall level of functioning. A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders-Text Revision (DSM-IV-TR)* 32, 34 (4th ed. 2000).

[2] A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.) DSM-IV-TR at 34.

diagnosed mood disorder. Dr. Razavipour noted that Claimant's GAF score was now 60 (Tr. at 350).

Claimant did not return to Prestera until June 16, 2012, after receiving a letter that he may go to jail for failure to pay child support for his eight children (Tr. at 347). On examination, Claimant had a goal-directed thought process; denied any perceptual disturbances; and had intact concentration, insight and judgment. (*Id.*) Dr. Razavipour noted Claimant's GAF score as 50 (Tr. at 348).

Ms. Morris met with Claimant on January 15, 2013. She noted that Claimant's sociability, speech and thought content were within normal limits (Tr. at 370). Claimant had a normal memory, normal coping ability and an appropriate affect (Tr. at 371). Ms. Morris opined that Claimant had a GAF score of 70.[3] (*Id.*)

Lisa Tate, M.A., performed a consultative psychological examination of Claimant on November 3, 2013. She noted that Claimant had a depressed mood and mildly restricted affect but also had fair insight, normal judgment and denied suicidal or homicidal ideation (Tr. at 399). Ms. Tate diagnosed major depressive disorder and generalized anxiety (Tr. at 400). She noted that Claimant's social functioning, pace and persistence were all within normal limits, but that his concentration was mildly deficient (Tr. at 400).

Claimant underwent inpatient treatment at the Prestera Crisis Residential Unit from January 29, 2014, until February 4, 2014 (Tr. at 455). On January 31, 2014, two days after admission, Claimant reported feeling a little better and four days after admission he reported "doing good"

---

[3] A GAF score of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning but that the individual is generally functioning pretty well with some meaningful interpersonal relationships. *DSM-IV-TR* at 34.

(Tr. at 447). On examination at the Prestera Crisis Residential Unit on February 3, 2014, Medical Services Notes reflect that Claimant was cooperative, less depressed and had an appropriate affect (Tr. at 447). He had a logical thought process, appropriate thought content and denied suicidal and homicidal thoughts (Tr. at 448). The notes reported that Claimant had a current GAF of 35 (Tr. at 449).[4]

Claimant underwent individual therapy and psychiatric treatment at Prestera from March 2014 until April 2015. On March 10, 2014, Dr. Razavipour observed that Claimant was well groomed, cooperative and had normal motor activity (Tr. at 464-665). While his mood was a "little edgy," he had an appropriate affect, denied suicidal or homicidal thoughts, was goal directed, and had intact memory and concentration (Tr. at 465). Dr. Razavipour diagnosed bipolar disorder. He also noted that Claimant had a GAF score of 35 (Tr. at 466).

Two days later, Holly McKenna, M.A., with Prestera Center, Inc., noted that Claimant's appearance, sociability, speech and thought content were within normal limits (Tr. at 474). He had a blunted affect and an overwhelmed coping ability but had a normal memory (Tr. at 475). Ms. McKenna noted that Claimant had a GAF score of 50. (*Id.*)

Ms. Tate examined Claimant again on March 31, 2014. Claimant had an euthymic mood and broad affect (Tr. at 486). Claimant had fair insight, normal judgment and denied suicidal or homicidal ideation. (*Id.*) Ms. Tate note that Claimant had normal social functioning, pace, persistence and concentration (Tr. 487-88).

On April 2, 2014, Claimant stated that he had been attending his son's ball games but was

---

[4] A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is a times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *DSM-TR-IV* at 34.

not comfortable being out in public (Tr. at 490). He reported watching television all day and drinking 12 cans of Coke a day. (*Id.*)

On April 7, 2014, Dr. Razavipour noted that Claimant had a fair mood and an appropriate and euthymic affect (Tr. at 506). However, she continued to report his GAF score as 35 (Tr. at 508).

On April 15, 2014, Claimant told Ms. McKenna that it would be hard for him to change as "all of the men in his family are controlling of and mean to women" and he did not want to be like that (Tr. at 491). Claimant was willing to work on changing his thinking to be more rational. (*Id.*)

On May 5, 2014, Claimant reported to Ms. McKenna he had exhibited two anger episodes and lost his temper (Tr. at 492). However, he was able to process how he tends to lose his temper more when he was "trying to look good" for his son's mother. (*Id.*)

On May 23, 2014, Claimant told Dr. Razavipour that he had not taken any medication for three weeks (Tr. at 510). She again noted that Claimant was cooperative, had a fair mood and an appropriate and euthymic affect. (*Id.*) Dr. Razavipour again noted that had a GAF score of 35 (Tr. at 512).

On June 2, 2014, Ms. McKenna noted that Claimant showed good insight and was able to understand that he lost his temper due to negative self-talk (Tr. at 493). On June 26, 2014, Claimant reported that he was charged with assault after losing his temper (Tr. at 494). On July 16, 2014, Claimant appeared with a much more euthymic mood because his son's mother "gave him another chance" but "I can't be as grumpy" (Tr. at 496).

On July 21, 2014, Claimant told Dr. Razavipour that he was doing better since going back on his medication but did report having some sexual trouble from the medication (Tr. at 514). On

examination, Claimant had a fair affect and an appropriate and euthymic mood. (*Id.*)   Dr. Razavipour indicated that Claimant had a logical thought process and appropriate thought content (Tr. at 515).

At a Prestera therapy session on August 6, 2014, Claimant reported to feeling "ok" and noted that if he stayed out of trouble, the court would drop his assault charge (Tr. at 497). Claimant was able to identify how he was using coping skills such as removing himself from situations where he could get angry. (*Id.*)

On December 1, 2014, Claimant had a blunted affect, but good concentration, intact judgment, an intact thought process and denied suicidal and homicidal behavior (Tr. at 498-499). On December 11 and 31, 2014, Claimant had an appropriate or euthymic affect, good concentration, was cooperative, had intact judgment and thought process and again denied suicidal or homicidal ideation (Tr. at 501-503).

However, on January 20, 2015, Claimant appeared dysphoric with impaired judgment (Tr. at 504). He admitted to having a fight with his girlfriend because he felt she was picking her friends over him (Tr. at 505).

On March 10, 2015, Dr. Razavipour completed a Mental Status Statement (Tr. at 525).  Dr. Razavipour noted that Claimant had severe mental symptoms and a poor prognosis. (*Id.*)  She noted that Claimant had a seriously limited or no ability to function in all mental areas (Tr. at 526-527). She also indicated that his impairments or treatment would cause him to be absent from work 5 times per month (Tr. at 527).

On April 7, 2015, Sarah Rohan, M.A., with Prestera Center, Inc., noted that Claimant's sociability, speech and thought content  remained within normal limits (Tr. at 534).   While she opined that Claimant had deficient coping skills, he had normal memory and an appropriate affect

(Tr. at 535).

Claimant's Testimony

Claimant testified to not having parental rights due to owing back child support (Tr. at 52). Claimant stated that he has not smoked marijuana for "about over a year" (Tr. at 54). Claimant testified that he has not obtained his GED (Tr. at 56).

Claimant testified to taking prescription medication for anxiety and a prescription as a mood stabilizer (Tr. at 58-59). Claimant sees a counselor at Prestera for approximately two times a month but sees his treating psychiatrist once every two months (Tr. at 60). Claimant testified to spending 14 days in a crisis unit at Prestera around 2006, for severe depression and thoughts of harming himself (Tr. at 61). Claimant was in the crisis unit at Prestera approximately 1 year prior to the hearing (Tr. at 62). He stayed seven days for severe depression and thoughts of harming himself.

Claimant testified to experiencing mood swings (Tr. at 65). He stated that he feels angry all the time (Tr. at 66). Claimant testified that he never has any energy and he experiences paranoia (Tr. at 69-70). Claimant spends most of his time during the day in bed watching tv (Tr. at 76). Claimant does not do chores or own pets. (*Id.*) Claimant testified that he is unable to work because he can't control his anger and he doesn't feel like doing anything when he is depressed (Tr. at 77).

Vocational Expert's Testimony

At the administrative hearing, the ALJ asked the vocational expert (VE) to consider a hypothetical individual of Claimant's same age with the same education, and work experience who could perform work at all exertional levels, but would be limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements; could make only simple work-related decisions; could handle only routine workplace changes; and could have

only occasional interaction with the public and co-workers (Tr. at 83-84). The VE testified that an individual with the above-stated limitations could perform medium work as a laundry worker, night cleaner and hand packager and heavy work as a commercial cleaner (Tr. at 85).

The ALJ next asked the vocational expert to consider an individual who was limited to simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple workplace decisions and routine workplace changes (Tr. at 85-86). The individual could have no interaction with the public and only occasional interaction with co-workers (Tr. at 86). The VE testified that the individual could still perform the above-stated jobs. (*Id.*)

Finally, the ALJ asked the VE to add that the individual would miss more than one day of work per month and would be off task greater than ten percent of the workday. The VE stated that the individual would not be able to maintain competitive employment. (*Id.*)

Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to fairly consider a treating source opinion. Claimant asserts that the ALJ did not properly evaluate Claimant's credibility and residual functional capacity (RFC) (ECF No. 11). Claimant avers that the ALJ failed to accept the testimony of the vocational expert (VE) that Claimant is incapable of substantial gainful activity if he "exceeds absence tolerance." (*Id.*)

In response, Defendant asserts that the ALJ reasonably gave little weight to the Mental Status Statement of Claimant's treating psychiatrist, Nika Razavipour, M.D., in March 2015 (ECF No. 12). Defendant avers that substantial evidence supports the ALJ's decision.

Discussion

Claimant argues that his treating psychiatrist, Dr. Razavipour, opined that Claimant would

be absent five or more days a month due to mental limitations (ECF No. 11). Claimant asserts that the ALJ unjustly gave little weight to the findings of Dr. Razavipour.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527, 416.927(d)(2) (2017). Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 404.1527, 416.927(d)(2) (2017). Under §§ 404.1527, 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527, 416.927(d)(3), (4), and (5) add the factors of supportability, consistency and specialization. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 404.1527, 416.927(d)(2).

Under §§ 404.1527, 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner. Sections 404.1527 and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967).

Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

In the present matter, the ALJ stated that he gave little weight to the opinion of Dr. Razavipour because it is not supported by the record as a whole. The ALJ pointed out that at the hearing, Claimant admitted that he sees a therapist at Prestera more frequently than he sees Dr. Razavipour. Claimant testified that he has difficulties interacting with Dr. Razavipour because he "can't understand her" (Tr. at 75). He testified that "it frustrates me because I don't know half of what she's saying." (*Id.*) Claimant stated that he deals more with a therapist. (*Id.*) Claimant testified that he sees his counselor at Prestera "regularly" for treatment, "usually two times a month" (Tr. at 60). Claimant testified that he sees Dr. Razavipour "only once every two months" to get medication refills. (*Id.*) The ALJ found that Dr. Razavipour's own treatment notes do not show the extreme symptoms she later opined and also reflected "questionable medication compliance" (Tr. at 25). Dr. Razavipour's medication management notes document that Claimant was cooperative, had normal sociability and was calm and oriented. Dr. Razavipour opined that Claimant had normal thought content, normal memory, normal motor activity, fair insight, fair judgment and fair or normal concentration (Tr. at 357, 465). The notes reflect that Claimant had an appropriate or euthymic affect and that Claimant denied suicidal ideation (Tr. at 363, 465, 500).

Additionally, the ALJ noted that Claimant told Dr. Razavipour that getting disability would allow him to keep his kids out of foster care (Tr. at 25). The ALJ held that "Dr. Razavipour's extreme opinion is not supported by the objective medical evidence as a whole, including [Dr. Razavipour's] own treatment notes." (*Id.*)

Claimant's therapy notes from Prestera reflect that Claimant's affect and mood often had a direct correlation with how his social life was going. Ms. Tate's examination reports are

inconsistent with the extreme limitations in March 2014. Claimant reported a broad or mildly restricted affect. Claimant had fair insight, normal judgment and denied suicidal or homicidal ideation. Ms. Tate noted that Claimant's social functioning, pace, and persistence were all within normal limits, "but that his concentration was either normal or only mildly deficient" (Tr. at 401, 487-488). These unremarkable findings after two separate examinations undermine Dr. Razavipour's opinion that Claimant had either a substantial loss or no ability to perform mental functions. Ultimately, the ALJ reasonably gave little weight to the March 2015 Mental Status Statement finding Claimant incapable of performing any mental functions.

Claimant's argues that the ALJ erred by not giving controlling weight to Dr. Razavipour's opinion that Claimant would be absent from work five times per month. Claimant asserts that because the VE testified that if someone missed more than one day per month he/she would not be able to maintain competitive employment, treatment notes from Prestera and Ms. Tate's examination reports support that Claimant would be absent from a job five times per month and thus unable to maintain competitive employment. Dr. Razavipour's opinion is not supported by substantial evidence as it is inconsistent with his own treatment notes and the evidence of record as a whole.

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id.* at *5. Social Security Ruling 96-8p explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin,* 826 F.3d 176, 179-80. (4th Cir. 2016). (citing *Mascio v. Colvin,*

780 F.3d 632, 635 (4th Cir. 2015). (quoting SSR 96-8p, 61 Fed. Reg. at 34, 478; see also *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

An RFC refers to the most a claimant can still do despite her limitations and is an assessment that is based upon all of the relevant evidence, including descriptions of limitations. 20 C.F.R. §§ 416.945(a), 404.1545. The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

The final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 416. 927(d)(2), (3), 404.1527. For cases at the hearing level, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 416.946, 404.1546. Therefore, an ALJ clearly has the duty and authority to make an independent assessment of a claimant's RFC based on the evidence of record.

Claimant avers that the RFC and credibility determination by the ALJ "is flawed because it does not accurately and fairly address all of Plaintiff's mental limitations." (*Id.*) Additionally, Claimant avers that the ALJ erred by disregarding the testimony of the VE who stated that Claimant is incapable of substantial gainful activity if Claimant would be absent from work five or more days a month due to mental limitations as stated by Dr. Razavipour.

Claimant has failed to demonstrate that the ALJ should have adopted this unsupported limitation when performing Claimant's RFC assessment. Neither Claimant's treatment notes from Prestera nor Ms. Tate's consultative psychological examination support that Claimant

would be absent from a job five times per month. As recognized by the Fourth Circuit, an ALJ need only pose questions to the VE based on credible limitations supported by the record. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that an ALJ's hypothetical question need only include those impairments supported by the record).

Moreover, "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Id*. (alterations in original) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir.1996). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart***,** 434 F.3d 650, 653 (4th Cir. 2005). (alteration in original) (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks omitted).

<u>Conclusion</u>

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other

substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY Plaintiff's Motion for Summary Judgment (ECF No. 11), GRANT Defendant's Brief in Support of Defendant's Decision (ECF No. 12), AFFIRM the final decision of the Commissioner, and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   August 10, 2018

Dwane L. Tinsley
United States Magistrate Judge